United Contractors, Inc. v. Commissioner.
United Contractors, Inc. v. Commissioner
Docket No. 1392-62.
United States Tax Court
T.C. Memo 1964-68; 1964 Tax Ct. Memo LEXIS 267; 23 T.C.M. (CCH) 453; T.C.M. (RIA) 64068; March 16, 1964
Henry G. Burke, 326 St. Paul Pl., Baltimore, Md., and A. Fred Freedman for the petitioner. George K. Dunham for the respondent. KERN Memorandum Opinion KERN, Judge: Respondent determined a deficiency of $115,043.94 in petitioner's Federal income tax for the fiscal year ended September 30, 1959. In his notice of deficiency respondent also disallowed a claim for refund filed by petitioner for the fiscal year ended September 30, 1959, in the amount of $44,195.91. In its petition to this Court petitioner alleged that respondent erred in determining the deficiency and in disallowing the claim for refund. Certain determinations *268 made by respondent have been stipulated to be correct. The principal issue presented for our decision is whether petitioner realized a previously eliminated intercompany profit taxable as ordinary income upon the sale, some 9 years later, of the stock of petitioner's wholly owned subsidiary to an unaffiliated corporation. Another issue presented by the pleadings, which arises from the Commissioner's disallowance of petitioner's claim for refund, is whether petitioner is entitled to a refund on the ground that the gain it reported on the sale of the stock of its subsidiary should not be recognized in the year of sale because of a pending claim against petitioner by the Federal Housing Administration and because of certain condemnation proceedings. All of the facts have been stipulated and are found accordingly. Petitioner is a corporation, incorporated under the laws of the State of Maryland on February 18, 1949, with its principal office in Baltimore, Maryland. Petitioner was organized and incorporated by Albert Stark and Harry Bart, both of whom owned substantially all the stock of the petitioner during the years involved in this proceeding. Cross Country Manor, Inc., sometimes *269 hereinafter referred to as Cross Country, a corporation affiliated with petitioner, was incorporated under the laws of the State of Maryland on April 14, 1949. Cross Country has a total authorized capital stock of 3,100 shares, of which 3,000 shares are common stock with no par value and having exclusive voting rights, and 100 shares of preferred stock with $1 par value. Harford Manor Apartments Corporation, sometimes hereinafter referred to as Harford, an affiliate of both Cross Country and petitioner, was incorporated under the laws of the State of Maryland on April 29, 1949. Harford's total authorized capital stock is 3,100 shares consisting of 500 shares of Class A common stock having a par value of $500 per share, 2,500 shares of Class B common stock with no par value, and 100 shares of preferred stock having a par value of $1 per share. The Class A common stock and preferred stock are without voting rights and are preferred as to dividends. On or about February 1, 1950, petitioner agreed to build an apartment house for Harford for a contract price of $2,057,400. A mortgage loan in the amount of the contract price was secured by Harford and was guaranteed under section 802 *270 of the National Housing Act. On June 27, 1950, petitioner acquired 2,500 shares (all of the voting stock) of Class B common stock of Harford. The only other outstanding stock of Harford was 100 shares of preferred stock issued to the Federal Housing Administration. Pursuant to the terms of the National Housing Act the stock issued to the Federal Housing Administration was nonvoting but acquired the right to elect directors only in the event of certain specific defaults. When such defaults are cured or waived, the right to elect directors again vests exclusively in the holders of the common stock. The apartment house was completed for Harford by petitioner during petitioner's taxable year ended September 30, 1951. The approximate cost of building the apartment was $1,711,850, and petitioner received a profit on its contract with Harford of approximately $345,550. For the taxable year ended September 30, 1951, petitioner filed a consolidated return with Harford and Cross Country. In this return the profit realized by petitioner on its contract with Harford was eliminated from taxable income as an inter-company profit. The only other construction performed by petitioner was an *271 apartment house built for Cross Country which was completed in 1950. This apartment was financed by a Federal Housing Administration insured loan and petitioner realized profit on this project of $158,368.19, which was eliminated as an intercompany profit on the consolidated return filed by petitioner, Cross Country, and Harford for the year ended September 30, 1950. The excess of the mortgage proceeds for the Harford and Cross Country profits over the costs of construction were held in the petitioner's treasury and thereafter loans were made to petitioner's shareholders or to corporations in which they had an interest. The balance sheet which is a part of petitioner's return for the year ended September 30, 1959, shows as an asset accounts and notes receivable in the approximate amount of $840,422 as of the end of the fiscal year. This figure is composed of the following accounts and/or notes receivable: Mondawmin Corp.
$351,250
Albert Stark
130,644
Ballard Contractors Inc.
271,187
Tropical Park
16,500
Miscellaneous
70,841
Ballard Contractors, Inc., is owned substantially by the same shareholders who own the petitioner. Albert Stark is a major shareholder *272 of petitioner. Harry Bart and Albert Stark own or owned a substantial amount of the stock of Tropical Park and Mondawmin Corp. The miscellaneous loans in the amount of $70,841 represented loans to various corporations and ventures in which petitioner and its shareholders had an interest. For the taxable year ended September 30, 1951, and for all subsequent years to and including the taxable year ended September 30, 1959, Harford's basis in the apartment building upon which it computed depreciation was the contract price paid less the inter-company profit eliminated on the consolidated return. Petitioner filed consolidated income tax returns with Harford and Cross Country during the period from September 1950 to September 1959. Petitioner kept its books and filed its tax returns on an accrual basis during this period. On May 5, 1959, petitioner sold its 2,500 shares of the Class B common stock of Harford to Edgewood Contractors, Inc., sometimes hereinafter referred to as Edgewood, for a purchase price of $193,796.87. Edgewood was an unaffiliated corporation owned by the same shareholders who owned petitioner. Prior to the purchase of petitioner's stock, Edgewood's principal asset *273 was stock in Harford Manor Apartments Corporation No. 2, sometimes hereinafter referred to as Harford No. 2. Subsequently, the buildings of Harford and Harford No. 2 owned by Edgewood were condemned by the United States Government through eminent domain proceedings instituted in July of 1959. These proceedings are still pending. Petitioner filed a consolidated return with Cross Country and Harford for the taxable year ended September 30, 1959. Petitioner reported its gain from the sale of the Harford stock on this return as capital gain. Petitioner agrees that it had no basis in the Harford stock and that its gain was $193,796.87. Petitioner did not report the previously eliminated intercompany profits. In his statutory notice of deficiency the respondent included in petitioner's income for the taxable year ended September 30, 1959, the sum of $248,171.50 taxable as ordinary income. This sum represented the previously eliminated profit on petitioner's contract with Harford in the approximate amount of $345,550, "less depreciation on this profit" [1] for the years ended September 30, 1950, to April 30, 1959, inclusive, in the total approximate amount of $97,378.50. *274 On December 19, 1961, petitioner filed a claim for refund of income taxes paid for the period ended September 30, 1959, in the amount not less than $44,195.91, contending that taxable income was overstated. This claim for refund was denied by the Commissioner. Petitioner argues that pursuant to the consolidated returns regulations it properly eliminated from taxable income the intercompany profit it realized in 1951 on the construction of an apartment house for its subsidlary and reduced the cost basis of the apartment house in the hands of Harford for purposes of depreciation by the amount of the eliminated intercompany profit. Petitioner argues that there is no authority in the consolidated returns regulations or in the statute for taxing to it in the fiscal year ended in 1959 the previously eliminated intercompany profit upon the sale of petitioner's stock in Harford to an unaffiliated corporation. Respondent argues that a proper interpretation of section 1502 and the regulations thereunder requires the inclusion in petitioner's gross income, in the year of sale of the subsidiary's stock, the previously eliminated intercompany profit in order to clearly reflect the income *275 of the petitioner and to prevent the profit received by petitioner from escaping taxation. Respondent also argues that the inclusion of the previously eliminated intercompany profit in petitioner's income in the year of sale of the stock of the subsidiary is a proper exercise of the respondent's authority under section 446 of the Internal Revenue Code of 1954 to require petitioner to adopt a method of accounting which will clearly reflect income. The issue involved in this case was recently presented to us in Henry C. Beck Builders, Inc., 41 T.C. 616 (Feb. 18, 1964), and it was resolved in favor of the petitioners. Inasmuch as the material facts and the arguments made by the parties in that case are the same as the material facts and the arguments presented in the instant case, further discussion would be superfluous and we hold for the petitioner on this issue on the authority of the cited case. In its petition the petitioner alleged that there is pending against it a claim by the Federal Housing Administration to require petitioner to make a prepayment on the mortgage covering the apartment project built by petitioner for Harford. Such claim *276 for prepayment was allegedly based on the intercompany profit realized by petitioner. Petitioner also alleged that on or about June 30, 1959, the United States Army condemned the land and apartment project owned by Harford, and that the condemnation proceedings were pending at the time of filing of the petition in the instant case. Petitioner alleged that the Federal Housing Administration's claim against it has been held in suspense because of the condemnation proceedings hereinbefore referred to. Petitioner filed a claim for refund for the taxable year ended September 30, 1959, with the district director of internal revenue in Baltimore, Maryland, seeking refund of income tax in the amount of $44,195.91 on the ground that its gain on the sale of the Harford stock should not be recognized but held in abeyance until conclusion of the condemnation proceedings and disposition of the claim by the Federal Housing Administration. In his notice of deficiency respondent disallowed petitioner's claim for refund. In the petition in the instant case petitioner requested this Court to allow the claim for refund. In his answer to the petition respondent denied the allegations of fact relating *277 to this matter. The only facts contained in the stipulation which bear on this issue are as follows: "On December 19, 1961, petitioner filed a claim for refund of income taxes paid for the period ended September 30, 1959, in the amount not less than $44,195.91, contending that taxable income was overstated. This claim for refund was denied by the Commissioner." The only facts contained in the supplemental stipulation which bear on this issue are as follows: "[The] buildings of Harford and Harford No. 2 owned by Edgewood were condemned by the United States Government through eminent domain proceedings instituted in July of 1959. These proceedings are still pending." On brief, petitioner has not made a request that we find any facts relating to the claim for refund, no argument has been made with respect to the claim for refund, and there is no contention that petitioner is entitled to relief with respect to the claim for refund. Since petitioner has not established any basis upon which we may hold that it is entitled to the relief requested in its claim for refund and in its petition to this Court, we hold for respondent on this issue. Decision will be entered under Rule 50. *278 Footnotes
1. This is the language used in the stipulation of facts and accurately describes the computations made by respondent in his deficiency notice. However, a better description of the amount subtracted from the intercompany profit in the notice of deficiency would be "the excess of depreciation on the building based on the construction price before the intercompany [profit] elimination over the depreciation based on the construction price reduced by the intercompany [profit] elimination, * * *." See Rev. Rul. 60-245↩, C.B. 1960-2, 267.